Donald SLAVEN; Salvatore Russo; Carl Gassaway; Yeriko Nitta, D/B/A The Seacliff Motel; Salvatore Manzella; Steven Panto, Donna Panto; Heinz Pet Products Company, a division of Star-Kist Foods, Inc., a California corporation; Gregory Kuglis, and Jack Morici, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs–Appellees,

v.

AMERICAN TRADING TRANSPORTA-TION COMPANY, Inc., (ATTRANSCO, INC.), Defendant–Appellant,

BP America, Inc., BP Oil Shipping Co., U.S.A.; BP Oil Supply Company; The Trans–Alaska Pipeline Liability Fund; Brandenburger Marine, Inc., Defendants,

G. Nazzareno, Inc., et al., Claimants.

No. 97–55293.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1998.

Decided June 22, 1998.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Aug. 18, 1998.

David E.R. Woolley, Mitchell F. Ducey, and Todd A. Valdes, Cogswell Woolley Naka-zawa & Russell, Long Beach, California, for defendant-appellant American Trading Transportation Company, Inc.

Marc M. Seltzer, Gretchen M. Nelson, and David H. Boren, Corinblit & Seltzer, Los Angeles, California; Merrill G. Davidoff and Peter Nordberg, Berger & Montague, Phila-delphia, Pennsylvania, for the plaintiffs-ap-pellees.

John A. Sturgeon and Renee Rubin, White & Case, Los Angeles, California; A. Stephen Hut, Jr., Eric J. Mogilnicki, Charles A. Mendels, and Kathleen M. Miller, Wilmer, Cutler & Pickering, Washington, DC, for defendant Trans–Alaska Pipeline Liability Fund.

Before FLETCHER, D.W. NELSON, and SILVERMAN, Circuit Judges.

D.W. NELSON, Circuit Judge.

Plaintiffs brought a class action under the Trans–Alaska Pipeline Authorization Act ("TAPAA"), 43 U.S.C. § 1653, general maritime and admiralty laws, and California law, Cal. Harb. & Nav.Code §§ 293 & 294, alleging damages resulting from an oil spill off of Huntington Beach, California. The American Trading Transportation Company, Inc. ("Attransco"), an owner and operator of the ruptured vessel, and a defendant in plaintiffs' action, now appeals the district court's judgment approving a $1,087,500 settlement that released another defendant in the class action from liability and preserved plaintiffs' claims against Attransco. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we hold that Attransco waived its right to appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 7, 1990, approximately one and one-half miles off the coast of Huntington Beach, California, the hull of the steamship American Trader was punctured by its own anchor while attempting to hook up to a mooring buoy. As a result of the rupture, the ship released more than 200,000 gallons of crude oil into the Pacific Ocean. Oil from the spill spread over a substantial area and washed ashore in Huntington Beach, Newport Beach, and adjacent nearby coastal areas.

On February 13, a class of plaintiffs composed of fishermen, hotel owners, motel owners, vacation homeowners, divers, local businesses, tour boat operators, and cannery operators (collectively "plaintiffs") filed this action in the United States District Court for the Central District of California against Attransco, BP America, Inc., BP Oil Shipping Co., U.S.A., BP Oil Supply Co., American Trading and Production Corp., Golden West Refining Co., and Brandenburger Marine, Inc., and the Trans–Alaska Pipeline Liability Fund (the "Fund") (collectively "defendants"). Plaintiffs' complaint asserts claims for economic damages under TAPAA, 43 U.S.C. § 1653(c), general maritime and admiralty laws, and Sections 293 and 294 of the California Harbor and Navigation Code.

Attransco, BP Oil Shipping Co., U.S.A., BP America, Inc., BP Oil Supply Co., and the American Trading Production Corp. are all owners and operators of the American Trader within the meaning of TAPAA. Golden West Refining Company owns and operates an offshore mooring facility in the waters off of Huntington Beach, and Brandenburger Marine, Inc. contracts to supply mooring master services for piloting vessels, including the American Trader, into Golden West's facility. The Fund is a non-profit corporate entity established pursuant to TAPAA that may sue and be sued in its own name. 43 U.S.C. § 1653(c)(4). The Fund consists of an accumulation of money raised by taxing trans-Alaska oil. 43 U.S.C. § 1653(c)(5).

According to TAPAA, liability for damages resulting from the transportation of trans-Alaska pipeline oil is divided between the Fund and the vessel's owner and operator as follows:

> Strict liability for all claims arising out of any one incident shall not exceed $100,000,000. The owner and operator of the vessel shall be jointly and severally liable for the first $14,000,000 of such claims that are allowed.... The Fund shall be liable for the balance of the claims that are allowed up to $100,000,000.... The Fund shall expeditiously pay claims under this subsection, including such $14,000,000, if the owner or operator of a vessel has not paid any such claim within 90 days after such claim has been submitted to such owner or operator.

43 U.S.C. § 1653(c)(3).

Following the service of plaintiffs' complaint, the Fund filed a motion to dismiss the action alleging, inter alia, that it was not

liable under TAPAA for the American Trader oil spill because TAPAA only creates liability for ships that load their oil in Alaska, and not for ships, like the American Trader, that receive Alaskan oil from other carriers. On February 25, 1991, the district court denied the Fund's motion to dismiss, holding, inter alia, that TAPAA applies to the American Trader oil spill. *See Holifield v. BP America, Inc.*, 786 F.Supp. 840, 847 (C.D.Cal. 1991). Following an appeal by the Fund, this court affirmed the district court's ruling. *See Slaven v. BP America, Inc.*, 973 F.2d 1468, 1478 (9th Cir.1992).

On May 11, 1992, plaintiffs filed their fourth amended complaint, which is the operative pleading in this litigation. On May 25, 1994, after extensive briefing and argument, the district court certified the following plaintiff class (the "Class"), pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All persons and entities owning, leasing or having an interest in real and/or personal property or having an ownership interest in commercial enterprises or working within or about the area or areas affected by the rupture of the hull of the American Trader on February 7, 1990, and the resulting oil spill and clean-up effort, who have suffered or will suffer economic damage as a result of the spill and/or the ensuing clean-up effort.

The Class then caused a Notice of Conditional Certification of Class Action to be mailed to potential members of the Class and published on two occasions in six local newspapers.

On December 5, 1995, after more than a year of settlement negotiations, Class plaintiffs filed with the district court a settlement agreement with defendants BP America, Inc., BP Oil Shipping Co., U.S.A., BP Oil Supply Co., and the Fund. The settlement agreement provides that BP America, Inc., BP Oil Shipping Co., U.S.A., and BP Oil Supply Co. (collectively the "BP defendants") will pay $1,087,500, and the Fund will pay $1,087,500, in return for being released from all Class claims arising out of the Huntington Beach oil spill. The settlement also states that "[t]he foregoing release ... shall not modify, limit, bar, dismiss, release or discharge in any respect, any rights, claims, causes of action or actions of any of the Plaintiffs or members of the Settlement Class against the Non–Settling Defendants, or any of their insurers."

In March 1996, Attransco filed a motion for summary judgment, arguing that because it had already paid the $14 million required by 43 U.S.C. § 1653(c), the proposed settlement absolved Attransco of any further liability for damages arising from the oil spill. Relying on Attransco's representation that it had paid the $14 million in May 1990 in accordance with TAPAA's requirement, the district court orally granted summary judgment in favor of Attransco. However, a few weeks later, after reviewing plaintiffs' objection to the proposed summary judgment order, the district court decided that Attransco had failed to supply evidence supporting its claim that it had paid the requisite $14 million. The court therefore vacated its informal order and ordered Attransco "to offer proof that the $14 million TAPAA liability has been extinguished." At the same time, the court denied Attransco's summary judgment motion with regard to plaintiffs' state law claims, holding that the proposed settlement did not relieve Attransco of any state law liability resulting from the oil spill.

On May 13, 1996, Attransco filed an Offer of Proof Regarding Attransco's Satisfaction of $14 Million TAPAA Liability, in which Attransco referenced, but failed to produce, an arbitrator's ruling that supposedly validated its counsel's records indicating that it had paid the requisite $14 million. The district court concluded that the proffered evidence did not establish that the arbitrator "actually and necessarily determined that Attransco has paid over $14 million in TAPAA cognizable claims." "Due to the vagueness of Attransco's offer of proof," the district court decided to deny Attransco's motion for summary judgment with respect to plaintiffs' TAPAA claim.

On July 29, 1996, the district court filed a Class Notice and Settlement Hearing Order, which preliminarily approved the plaintiffs' settlement with the Fund and with the BP defendants. Notice of the settlement was mailed to over 10,000 potential Class members and published in eight local periodicals.

On September 10, 1996, Class plaintiffs filed their motion for final approval of the settlement with the Fund and the BP defendants. Attransco filed timely objections to the settlement. Attransco argued, inter alia, that the settlement violates TAPAA because it preserves plaintiffs' claims against other defendants, including Attransco.

On October 21, 1996, the district court conducted a hearing in order to decide whether it should grant final approval to the settlement. Part of the discussion was continued to November 18, 1996. At the hearings, Attransco failed to voice its objection to the settlement between the Class and the Fund, although the issue of whether there were remaining objections to the settlement was raised on several occasions. After both hearings, the district court concluded that because there were no objections to the settlement between the Class and the Fund, it would approve the settlement. The settlement between the Class and the BP defendants ultimately collapsed, however. *See Slaven v. BP America, Inc.*, 958 F.Supp. 1472, 1485 (C.D.Cal.1997).

At the district court's request, counsel for the Fund circulated a stipulation providing for the entry of a judgment that would approve the Fund settlement and dismiss the Fund from the Class action. The stipulation was signed by all original parties to the Class action, including Attransco, and was lodged with the district court on December 24, 1996. On January 7, 1997, the district court entered a final judgment approving the Fund settlement.

Attransco timely appeals the district court's judgment on the ground that the settlement did not dismiss plaintiffs' claims against non-settling defendants, "notwithstanding that the TAPAA Fund is commanded by statute at 43 U.S.C. § 1653(c)(1) to settle 'all damages.' "

## ANALYSIS

■ We are asked to dismiss this appeal on the ground that Attransco withdrew its objections to the settlement agreement and therefore waived its right to pursue this appeal. For the reasons stated below, we hold that because Attransco unconditionally stipu-

lated to the settlement agreement, it cannot challenge the agreement on appeal.

■ It is well-established that an appellate court will not consider issues that were not properly raised before the district court. *See, e.g., Crawford v. Lungren*, 96 F.3d 380, 389 n. 6 (9th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997). It follows that if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal. *General Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995). This court has held that "withdrawal of an objection is tantamount to a waiver of an issue for appeal." *United States v. Manarite*, 44 F.3d 1407, 1419 n. 18 (9th Cir. 1995).

In the present case, Attransco initially filed objections to the settlement agreement between the Fund and the Class plaintiffs, alleging that the settlement violates the terms of TAPAA. Attransco contended, "The fundamental problem raised by Clauses 12 and 13 [of the agreement] is that plaintiffs are trying to settle *partially* with the Fund, and to retain some undefined measure of damages, when the Fund statute *commands* the Fund to settle 'all damages.' "

We conclude, however, that Attransco withdrew its initial objections and waived its right to challenge the settlement on appeal when it signed a "Stipulation Concerning Entry Of [Proposed] Final Judgment And Order Of Dismissal With Prejudice As To Defendant The Trans–Alaska Pipeline Liability Fund." Attransco signed the stipulation approving the settlement without condition or reservation. Moreover, a cover letter from the Fund's attorney, attached to the stipulation, indicated that Attransco's signature "confirm[ed] that no party opposes entry of the proposed judgment relating to the Class's settlement with the Fund." In view of these circumstances, we are convinced that the act of signing the stipulation was sufficiently intentional to constitute a withdrawal of Attransco's original objections to the settlement. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (describing waiver as "the 'inten-

tional relinquishment or abandonment of a known right' ") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

■ In general, a party cannot appeal a judgment entered with its consent. *See Nashville, Chattanooga & St. Louis Ry. v. United States*, 113 U.S. 261, 266, 5 S.Ct. 460, 28 L.Ed. 971 (1885) ("[A] decree, which appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause."); *United States v. All American Airways*, 180 F.2d 592, 592 (9th Cir.1950) (holding that "a judgment which was consented to by appellant and appellee .... is not reversible"); *see also Clapp v. Commissioner*, 875 F.2d 1396, 1398 (9th Cir.1989). An exception to this longstanding rule exists where a party specifically preserves its right to appeal. As Judge Posner of the Seventh Circuit has explained:

> A party to a consent decree or other judgment entered by consent may not appeal unless it *explicitly* reserves the right to appeal. The purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal. The presumption, therefore, is that the consent operates as a waiver of the right to appeal. It is because the parties should not be left guessing about the finality and hence efficacy of the settlement that any reservation of a right to appeal should be explicit.

*Association of Community Orgs. for Reform Now v. Edgar*, 99 F.3d 261, 262 (7th Cir. 1996) (citations omitted); *see also Dorse v. Armstrong World Indus., Inc.*, 798 F.2d 1372, 1375 (11th Cir.1986) ("Where the parties have agreed to entry of an order or judgment without any reservation relevant to the issue sought to be appealed, one party may not later seek to upset the judgment ...."") (citation omitted); *Coughlin v. Regan*, 768 F.2d 468, 470 (1st Cir.1985) ("While it is possible for a party to consent to a judgment and still preserve his right to appeal, he must reserve that right unequivocally, as it will not be presumed."); 20 Moore's Federal Practice § 303.10[2][e] (3d ed. 1998) ("Although a party that consents to entry of a judgment

ordinarily waives the right to appeal, a plaintiff may enter into a stipulation of dismissal with prejudice that expressly reserves the right to appeal."). Because Attransco never indicated that it was signing the settlement with qualification or reservation, it is precluded from bringing this appeal.

■ Attransco argues that because it never actually consented to the entry of judgment, the rule barring consenting parties from appeal does not apply in this case. *See Swift & Co. v. United States*, 276 U.S. 311, 324, 48 S.Ct. 311, 72 L.Ed. 587 (1928) ("Decrees entered by consent have been reviewed upon appeal ... where there was a claim of lack of actual consent to the decree as entered ....") (citations omitted); *Tapper v. Commissioner*, 766 F.2d 401, 403 (9th Cir. 1985) (holding that a party can appeal a judgment entered with its consent where the party did not actually consent); *United States v. Bechtel Corp.*, 648 F.2d 660, 663 (9th Cir.1981) (same). According to Attransco, it only consented to the format of the judgment, not to the judgment itself.[1] Attransco claims that signing the stipulation was simply "a ministerial act" approving the stipulation "as to form." Attransco's contention must fail because nothing in the stipulation or the attached cover letter suggests that the stipulation only reflects the signatories' approval as to the agreement's form. Rather, the stipulation categorically states that the parties "stipulated and agreed" that the proposed judgment "may be entered." In sum, because there is every indication in the record that Attransco actually consented to the entry of judgment, Attransco is bound by its decision to sign the settlement agreement.

## CONCLUSION

For the foregoing reasons, we hold that Attransco waived its right to challenge the settlement between the Fund and the Class plaintiffs. Accordingly, Attransco's appeal is DISMISSED.

---

**1.** Attransco's argument that the consent decree eliminates any liability that it might have under

TAPAA suggests a rational motive behind its decision to sign the stipulation.