*702 Justice Breyer,
with whom
Justice Kennedy, Justice Souter, and Justice Alito join, dissenting.
This case involves a dispute about the meaning of terms in a federal health insurance contract. The contract, between a federal agency and a private carrier, sets forth the details of a federal health insurance program created by federal statute and covering 8 million federal employees. In all this the Court cannot find a basis for federal jurisdiction. I believe I can. See Clearfield Trust Co. v. United States, 318 U. S. 363 (1943).
I
A
There is little about this case that is not federal. The comprehensive federal health insurance program at issue is created by a federal statute, the Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U. S. C. §8901 et seq. (2000 ed. and Supp. III). This program provides insurance for Federal Government employees and their families. That insurance program today covers approximately 8 million federal employees, retirees, and dependents, at a total cost to the Government of about $22 billion a year. Brief for United States as Amicus Curiae 2.
To implement the statute, the Office of Personnel Management (OPM), the relevant federal agency, enters into contracts with a handful of major insurance carriers. These agency/carrier contracts follow a standard agency form of about 38,000 words, and contain the details of the plan offered by the carrier. See § 8902(d) (2000 ed.) (requiring contract between carrier and agency to contain a detailed statement of the terms of the plan); see also Federal Employees Health Benefits Program Standard Contract (CR-2003) (2005), online at http://www.opm.gov/insure/carriers/ samplecontract.doc (sample form agency/carrier contract) (as visited June 7, 2006, and available in Clerk of Court’s case file). The contract lists, for example, the benefits provided to the employees who enroll. It provides a patient’s bill of *703 rights. It makes clear that the Government, not the carrier, will receive the premiums and will pay the benefits. It specifies that the carrier will administer the program that the contract sets forth, for which the carrier will receive an adjustable fee. The contract also states, “By enrolling or accepting services under this contract, [enrollees] are obligated to all terms, conditions, and provisions of this contract.” App. 90.
As the statute requires, § 8907(b), the agency/carrier contract also provides that the carrier will send each enrolled employee a brochure that explains the terms of the plan, as set forth in the contract. The brochure explains that it “describes the benefits of the . . . [p]lan under [the carrier’s] contract . . . with [the federal agency], as authorized by the [federal statute].” Id., at 158. The terms of the brochure are incorporated into the agency/carrier contract. Id., at 89. The carrier distributes the brochure with a seal attached to the front stating, “Authorized for distribution by the United States Office of Personnel Management Retirement and Insurance Service.” Id., at 155.
The program is largely funded by the Federal Government. More specifically, the Federal Government pays about 75% of the plan premiums; the enrollee pays the rest. § 8906(b). These premiums are deposited into a special fund in the United States Treasury. § 8909(a). The carrier typically withdraws money from the fund to pay for covered health care services, ibid.; however, the fund’s money belongs, not to the carrier, but to the federal agency that administers the program. After benefits are paid, any surplus in the fund can be used at the agency’s discretion to reduce premiums, to increase plan benefits, or to make a refund to the Government and enrollees. § 8909(b); 5 CFR § 890.503(c)(2) (2005). The carrier is not at risk. Rather, it earns a profit, not from any difference between plan premiums and the cost of benefits, but from a negotiated service charge that the federal agency pays directly.
*704 Federal regulations provide that the federal agency will resolve disputes about an enrolled employee’s coverage. § 890.105(a)(1); see also 5 U. S. C. §8902(j) (requiring carrier to provide health benefit if OPM concludes that enrollee is entitled to the benefit under the contract). The agency’s resolution is judicially reviewable under the Administrative Procedure Act in federal court. 5 CFR §890.107 (2005).
In sum, the statute is federal, the program it creates is federal, the program’s beneficiaries are federal employees working throughout the country, the Federal Government pays all relevant costs, and the Federal Government receives all relevant payments. The private carrier’s only role in this scheme is to administer the health benefits plan for the federal agency in exchange for a fixed service charge.
B
The plan at issue here, the Blue Cross Blue Shield Service Benefit Plan, is the largest in the statutory program. The plan’s details are contained in Blue Cross Blue Shield’s contract with the federal agency and in the brochure, which binds the enrolled employee to that contract. In this ease, the carrier seeks to require the enrolled employee’s estate to abide by provisions that permit the carrier to obtain (and require the enrolled employee to pay) reimbursement from an enrollee for benefits provided if the enrollee recovers money from a third party (as compensation for the relevant injury or illness). The parties dispute the proper application of some of those provisions.
First, the agency’s contract with the carrier requires the carrier to “mak[e] a reasonable effort to seek recovery of amounts to which it is entitled to recover.” App. 95. And the carrier must do so “under a single, nation-wide policy to ensure equitable and consistent treatment for all [enrollees] under this contract.” Ibid. Any money recovered by the carrier goes into the statutory fund in the United States *705 Treasury, and may be spent for the benefit of the program at the discretion of the federal agency. See supra, at 703.
Second, the agency/carrier contract and the brochure set forth the enrollee’s obligation to reimburse the carrier under certain circumstances. The contract states, “The Carrier may . . . recover directly from the [enrollee] all amounts received by the [enrollee] by suit, settlement, or otherwise from any third party or its insurer ... for benefits which have also been paid under this contract.” App. 95. The agency/carrier contract also says that the “[Carrier’s subrogation rights, procedures and policies, including recovery rights, shall be in accordance with the provisions of the agreed-upon brochure text.” Id., at 100. The relevant provisions in the brochure (which also appear in the appendix to the agency/carrier contract) tell the enrollee:
“If another person or entity, through an act or omission, causes you to suffer an injury or illness, and if we pay benefits for that injury or illness, you must agree to the following:
“All recoveries you obtain (whether by lawsuit, settlement, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid....
“We will not reduce our share of any recovery unless we agree in writing to a reduction, . . . because you had to pay attorneys’ fees.” Id., at 165.
The enrollee must abide by these requirements because, as explained above, the brochure tells the beneficiary that, by enrolling in the program, he or she is agreeing to the terms of the brochure, which in turn “describes the benefits of the [plan] under [the agency/carrier] contract.” Id., at 158.
II
A
I have explained the nature of the program and have set forth the terms of the agency/carrier contract in some detail *706 because, once understood, their federal nature brings this case well within the scope of the relevant federal jurisdictional statute, 28 U. S. C. § 1331, which provides jurisdiction for claims “arising under” federal law. For purposes of this statute, a claim arises under federal law if federal law creates the cause of action. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U. S. 804, 808 (1986); see also American Well Works Co. v. Layne & Bowler Co., 241 U. S. 257, 260 (1916) (opinion of Holmes, J.) (A “suit arises under the law that creates the cause of action”). And this Court has explained that § 1331’s “statutory grant of ‘jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.’” National Farmers Union Ins. Cos. v. Crow Tribe, 471 U. S. 845, 850 (1985); see also Illinois v. Milwaukee, 406 U. S. 91 (1972); 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4514, p. 455 (2d ed. 1996) (“A case ‘arising under’ federal common law presents a federal question and as such is within the original subject-matter jurisdiction of the federal courts”). In other words, “[fjederal common law as articulated in rules that are fashioned by court decisions are ‘laws’ as that term is used in § 1331.” National Farmers, supra, at 850.
It seems clear to me that the petitioner’s claim arises under federal common law. The dispute concerns the application of terms in a federal contract. This Court has consistently held that “obligations to and rights of the United States under its contracts are governed exclusively by federal law.” Boyle v. United Technologies Corp., 487 U. S. 500, 504 (1988). This principle dates back at least as far as Clearfield Trust, 318 U. S., at 366, where the Court held that the “rights and duties of the United States on [federal] commercial paper,” namely a federal employee’s paycheck, “are governed by federal rather than local law.” The Court reasoned that “[w]hen the United States disburses its funds or *707 pays its debts, it is exercising a constitutional function or power,” a power “in no way dependent on the laws of Pennsylvania or of any other state.” Ibid. Accordingly, “[i]n [the] absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law.” Id., at 367.
This Court has applied this principle, the principle embodied in Clearfield Trust, to Government contracts of all sorts. See, e. g., West Virginia v. United States, 479 U. S. 305, 308-309 (1987) (contract regarding federal disaster relief efforts); United States v. Kimbell Foods, Inc., 440 U. S. 715, 726 (1979) (contractual liens arising from federal loan programs); United States v. Little Lake Misere Land Co., 412 U. S. 580, 592 (1973) (agreements to acquire land under federal conservation program); United States v. Seckinger, 397 U. S. 203, 209 (1970) (Government construction contracts); United States v. County of Allegheny, 322 U. S. 174, 183 (1944) (Government procurement contracts).
In this case, the words that provide the right to recover are contained in the brochure, which in turn explains the provisions of the contract between the Government and the carrier, provisions that were written by a federal agency acting pursuant to a federal statute that creates a federal benefit program for federal employees. At bottom, then, the petitioner’s claim is based on the interpretation of a federal contract, and as such should be governed by federal common law. And because the petitioner’s claim is based on federal common law, the federal courts have jurisdiction over it pursuant to §1331. The lower federal courts have similarly found § 1331 jurisdiction over suits between private parties based on Federal Government contracts. See, e. g., Downey v. State Farm Fire & Casualty Co., 266 F. 3d 675, 680-681 (CA7 2001) (Easterbrook, J.) (National Flood Insurance Program contracts); Almond v. Capital Properties, Inc., 212 F. 3d 20, 22-24 (CA1 2000) (Boudin, J.) (Federal Railroad Ad *708 ministration contract); Price v. Pierce, 823 F. 2d 1114, 1119—1120 (CA7 1987) (Posner, J.) (Dept, of Housing and Urban Development contracts).
B
What might one say to the contrary? First, I may have made too absolute a statement in claiming that disputes arising under federal common law are (for jurisdictional purposes) cases “arising under” federal law. After all, in every Supreme Court case I have cited (except National Farmers and Milwaukee, and not including the Courts of Appeals cases), the United States was a party, and that fact provides an independent basis for jurisdiction. See 28 U. S. C. §§ 1845,1346(a)(2), 1491(a)(1). In those cases the decision to apply federal common law was, therefore, a “choice-of-law issue” only, ante, at 691, and the Court consequently did not need to address the application of the Clearfield Trust doctrine to § 1331 “arising under” jurisdiction.
But I have found no case where a federal court concluded that federal common law governed a plaintiff’s contract claim but nevertheless decided that the claim did not arise under federal law. I have found several lower court cases (cited supra, at 707 and this page) where courts asserted §1331 jurisdiction solely on the basis of federal common law. And in Machinists v. Central Airlines, Inc., 372 U. S. 682, 693, n. 17 (1963), this Court cited the Clearfield Trust cases in finding §1331 jurisdiction over the contract suit before it, noting that although those cases “did not involve federal jurisdiction as such,” nevertheless “they are suggestive” on the issue of § 1331 jurisdiction over suits involving Federal Government contracts “since they hold federal law determinative of the merits of the claim.”
It is enough here, however, to assume that federal common law means federal jurisdiction where Congress so intends. Cf. Clearfield Trust, supra, at 367 (“In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards” (emphasis added)). If so, there are strong reasons for the *709 federal courts, following Clearfield Trust, to assume jurisdiction and apply federal common law to resolve this case.
First, although the nominal plaintiff in this ease is the carrier, the real party in interest is the United States. Any funds that the petitioner recovers here it must pay directly to the United States, by depositing those funds in the FEHBA United States Treasury account managed by the federal agency. The carrier simply administers the reimbursement proceeding for the United States, just as it administers the rest of the agency/carrier contract. Accordingly, this case, just like the Clearfield Trust cases, concerns the “rights of the United States under its contracts.” Boyle, 487 U. S., at 504.
Second, the health insurance system FEHBA establishes is a federal program. The Federal Government pays for the benefits, receives the premiums, and resolves disputes over claims for medical services. Given this role, the Federal Government’s need for uniform interpretation of the contract is great. Given the spread of Government employees throughout the Nation and the unfairness of treating similar employees differently, the employees’ need for uniform interpretation is equally great. That interest in uniformity calls for application of federal common law to disputes about the meaning of the words in the agency/carrier contract and brochure. See Clearfield Trust, 318 U. S., at 367 (applying federal common law because the “desirability of a uniform [federal] rule is plain”); see also Bank of America Nat. Trust & Sav. Assn. v. Parnell, 352 U. S. 29, 33, 34 (1956) (“[L]itigation with respect to Government paper ... between private parties” may nevertheless “be governed by federal [common] law” where there is “the presence of a federal interest”). And that interest in uniformity also suggests that the doors of the federal courts should be open to decide such disputes.
Third, as discussed above, the provisions at issue here are just a few scattered islands in a sea of federal contractual provisions, all of which federal courts will interpret and *710 apply (when reviewing the federal agency’s resolution of disputes regarding benefits). Given this context, why would Congress have wanted the courts to treat those islands any differently? I can find no convincing answer.
Regardless, the majority and the Court of Appeals believe they have come up with one possible indication of a contrary congressional intent. They believe that the statute’s jurisdictional provision argues against federal jurisdiction where the United States is not formally a party. That provision gives the federal district courts “original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter.” 5 U. S. C. §8912. According to the majority, if Congress had wanted cases like this one to be brought in the federal courts, it would have extended §8912 to cover them. Ante, at 696.
That is not so. Congress’ failure to write § 8912 to include suits between carriers and enrollees over plan provisions may reflect inadvertence. Or it may reflect a belief that §1331 covered such cases regardless. Either way, §8912 tells us nothing about Congress’ intent in respect to § 1331 jurisdiction.
But why then did Congress write § 8912 at all? After all, the cases there covered — contract claims against the Federal Government “founded on” the federal health insurance program — would also be governed by federal common law and (if my view is correct) would have fallen within the scope of § 1331. What need would there have been (if my view is correct) to write a special section, § 8912, expanding federal jurisdiction to encompass these claims?
The answer, as the majority itself points out, ante, at 686, is that Congress did not write § 8912 to expand the jurisdiction of the federal courts. It wrote that section to transfer a category of suits (claims against the United States exceeding $10,000) from one federal court (the Court of Federal Claims) to others (the federal district courts).
*711 In sum, given Clearfield Trust, supra, and its progeny, there is every reason to believe that federal common law governs disputes concerning the agency/carrier contract. And that is so even though “it would have been easy enough for Congress to say” that federal common law should govern these claims. See ante, at 696. After all, no such express statement of congressional intent was present in Clearfield Trust itself, or in any of the cases relying on Clearfield Trust for the authority to apply federal common law to interpret Government contracts. See, e. g., cases cited supra, at 707; see also Clearfield Trust, supra, at 367 (“In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards”). Accordingly, I would apply federal common law to resolve the petitioner’s contract claim. And, as explained above, when the “governing rule of law” on which a claim is based is federal common law, then the federal courts have jurisdiction over that claim under § 1331.
C
The Court adds that, in spite of the pervasively federal character of this dispute, state law should govern it because the petitioner has not demonstrated a “'significant conflict . . . between an identifiable federal policy or interest and the operation of state law.’” Ante, at 693. But as I have explained, see supra, at 708-709, the Federal Government has two such interests: (1) the uniform operation of a federal employee health insurance program, and (2) obtaining reimbursement under a uniform set of legal rules. These interests are undermined if the amount a federal employee has to reimburse the FEHBA United States Treasury fund in eases like this one varies from State to State in accordance with state contract law. We have in the past recognized that this sort of interest in uniformity is sufficient to warrant application of federal common law. See, e.g., Boyle, supra, at 508 (“[Wjhere the federal interest requires a uniform rule, *712 the entire body of state law applicable to the area conflicts and is replaced by federal rules”); Kimbell Foods, 440 U. S., at 728 (“Undoubtedly, federal programs that ‘by their nature are and must be uniform in character throughout the Nation’ necessitate formulation of controlling federal rules”); Clearfield Trust, 318 U. S., at 367 (applying federal common law because “application of state law ... would subject the rights and duties of the United States to exceptional uncertainty” and “would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states,” and therefore “[t]he desirability of a uniform rule is plain”).
But even if the Court is correct that “‘[t]he prudent course’” is “‘to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation,’” ante, at 691-692 (quoting Kimbell Foods, supra, at 740), there would still be federal jurisdiction over this case. That is because, as Clearfield Trust, Kimbell Foods, and other cases make clear, the decision to apply state law “as the federal rule of decision” is itself a matter of federal common law. See, e.g., Kimbell Foods, supra, at 728, n. 21 (“‘Whether state law is to be incorporated as a matter of federal common law . .. involves the . . . problem of the relationship of a particular issue to a going federal program’ ” (emphasis added)); Clearfield Trust, supra, at 367 (“In our choice of the applicable federal rule we have occasionally selected state law” (emphasis added)); see also R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 700 (5th ed. 2003) (“[T]he current approach, as reflected in [Kimbell Foods, supra], suggests that... while under Clearfield federal common law governs, in general it will incorporate state law as the rule of decision”); 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4518, at 572-573 (“In recent years, the Supreme Court has put increasing emphasis on the notion that when determining what should be the con *713 tent of federal common law, the law of the forum state should be adopted absent some good reason to displace it” (emphasis added; citing Kimbell Foods, supra, and Clearfield Trust, supra)).
On this view, the Clearfield Trust inquiry involves two questions: (1) whether federal common law governs the plaintiff’s claim; (2) if so, whether, as a matter of federal common law, the Court should adopt state law as the proper “‘federal rule of decision,’” ante, at 692 (emphasis added). See, e. g., Kimbell Foods, supra, at 727 (deciding that “[federal law therefore controls” the dispute but concluding that state law gives “content to this federal rule”); United States v. Little Lake Misere Land Co., 412 U. S., at 593-594 (The “first step of the Clearfield analysis” is to decide whether “‘the courts of the United States may formulate a rule of decision,’ ” and the “next step in our analysis is to determine whether” the federal rule of decision should “ ‘borro[w]’ state law”); see also Friendly, In Praise of Erie — and of the New Federal Common Law, 39 N. Y. U. L. Rev. 383, 410 (1964) (“Clearfield decided not one issue but two. The first... is that the right of the United States to recover for conversion of a Government check is a federal right, so that the courts of the United States may formulate a rule of decision. The second ... is whether, having this opportunity, the federal courts should adopt a uniform nation-wide rule or should follow state law” (footnote omitted)). Therefore, even if the Court is correct that state law applies to claims involving the interpretation of some provisions of this contract, the decision whether and when to apply state law should be made by the federal courts under federal common law. Accordingly, for jurisdictional purposes those claims must still arise under federal law, for federal common law determines the rule of decision.
Finally, the footnote in Boyle cited by the Court did not purport to overrule Clearfield Trust on this point. See Boyle, 487 U. S., at 507, n. 3 (“If the distinction between dis *714 placement of state law and displacement of federal law’s incorporation of state law ever makes a practical difference, it at least does not do so in the present case”).
With respect, I dissent.