[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 29, 2001
THOMAS K. KAHN
CLERK

_____

Nos. 98-7015 & 99-10305

_____

D. C. Docket No. 96-1117-CV-1-CB-C

ALEX W. NEWTON,

Plaintiff-Appellee,

versus

CAPITAL ASSURANCE COMPANY, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(March 29, 2001)**

ON PETITION FOR REHEARING

Before ANDERSON, Chief Judge, HULL and COX, Circuit Judges.

COX, Circuit Judge:

Capital Assurance Company's Petition for Rehearing, which the United States has supported as amicus curiae, is GRANTED. We agree with the United States that the opinion published at 209 F.3d 1302 misinterpreted parts of the Federal Emergency Management Agency's Financial Assistance/Subsidy Arrangement, 44 C.F.R. pt. 62, app. A, and that we arrived at the wrong result. That opinion is accordingly VACATED and the following opinion issued in its stead:

Capital Assurance Company, Inc. appeals the award of prejudgment interest in an insurance contract action based on a federally subsidized Standard Flood Insurance Policy it issued under Part B of the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4041, 4071-4129 (1994 & Supp. II 1996) (NFIA). We address, for the first time in this circuit, whether a district court violates sovereign immunity principles by awarding prejudgment interest against a so-called "Write-Your-Own" company empowered to issue flood insurance by the Federal Emergency Management Agency. We hold that it does.

## I. Background

Alex W. Newton owns a vacation house on the Gulf of Mexico that is constructed on an artificially built-up point extending into the water and protected only by bulkheads. Capital Assurance Company, Inc. (Capital) sold Newton a federally subsidized Standard Flood Insurance Policy (SFIP) covering the property.

2

The Federal Emergency Management Agency (FEMA) uses "Write-Your-Own" (WYO) companies like Capital to aid it in its statutory duty to administer the National Flood Insurance Program (NFIP). *See* 42 U.S.C. § 4081(a) (permitting FEMA's Director to enter into arrangements with private insurance companies in order to make use of their "facilities and services"); 44 C.F.R. § 62.23(a)-(d) (establishing the WYO program to permit private insurers to sell and administer SFIPs). In 1995 Newton's house and lot suffered predictable extensive flood damage from Hurricane Opal, and Newton filed a claim.

After Capital denied a portion of Newton's claim, Newton sued in an Alabama state court. The defendants removed the case, asserting original jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4053. Following a bench trial, the court awarded Newton compensatory damages, prejudgment interest, and costs. Capital appeals only the award of prejudgment interest.[1]

---

[1] Capital noticed appeal of the award of costs as well, but at oral argument the parties stipulated to settlement of the costs issue.

## II. Subject-Matter Jurisdiction

Although neither party has challenged the subject-matter jurisdiction of the federal courts over this suit, we are compelled to address the question sua sponte, *see*, *e.g.*, *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), because both the record and answers we received to questions posed at oral argument betray some confusion on the issue. In the district court, Newton at first filed a motion to remand for lack of federal-question jurisdiction. Capital opposed the motion, again asserting jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4053. For reasons unclear from the record, Newton later conceded federal-question jurisdiction. We now clarify that the district court had federal-question jurisdiction under 28 U.S.C. § 1331.

There are three statutes that potentially affect federal-question jurisdiction in this case: the general "arising under" jurisdiction provision of 28 U.S.C. § 1331 and two provisions of the NFIA, 42 U.S.C. § 4053 and 42 U.S.C. § 4072. We begin by dispensing with § 4053; Capital's reliance on that section was misplaced. Under 42 U.S.C. § 4041, the Director of FEMA may implement the NFIP using one of two different institutional structures, each of which specifies a different role for private insurance companies. The first scheme, described in 42 U.S.C. §§ 4051-4056, includes a provision for suing private insurers, § 4053. The NFIP is, however, not

currently implemented under that scheme. It is instead implemented under the alternative structure set forth in 42 U.S.C. §§ 4071-4072. *See Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir. 1998). It is thus clear from the statute and the current implementation of the program that § 4053 does not apply to this suit. We next turn to 28 U.S.C. § 1331. Under that section, federal courts have federal-question jurisdiction over suits "in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 2856 (1983). The federal cause of action or question of federal law must be apparent from the face of the well-pleaded complaint and not from a defense or anticipated defense. *See id.* at 9-11, 103 S. Ct. at 2846-47. But the federal question need not be statutory; federal common law will suffice. *See Nat'l Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850, 105 S. Ct. 2447, 2451 (1985). Here, the complaint alleged, among other things, breach of an SFIP contract. SFIP contracts are interpreted using principles of federal common law rather than state contract law. *See, e.g.*, *Carneiro da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584 (11th Cir. 1997) ("'As contracts, the standard policies issued under the Program are governed by federal law, applying "standard insurance law principles."'" (quoting

5

*Wright v. Dir., Fed. Emergency Mgmt. Agency*, 913 F.2d 1566, 1570-71 (11th Cir. 1990))). Thus, a complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question on its face.

This leaves us only to question whether 42 U.S.C. § 4072, the provision for suits against FEMA under the NFIP as currently implemented, affects our jurisdiction. On its face, § 4072 provides only for suits against FEMA. It does not discuss the WYO program, and we therefore do not read it as addressing suits against WYO companies. It does not, therefore, abrogate § 1331 jurisdiction. *See Carneiro da Cunha*, 129 F.3d at 586-87 (implicitly recognizing federal subject-matter jurisdiction over a suit against a WYO company after the implementation of § 4072). We need not consider the opposite question: whether it provides an additional basis for jurisdiction against WYO companies, *see Van Holt*, 163 F.3d at 165-66 (finding WYO companies subject to jurisdiction under § 4072 (as well as § 1331) because a suit against a WYO company is the "functional equivalent" of a suit against FEMA), because our conclusion regarding jurisdiction under § 1331 is sufficient to answer the jurisdictional question we raise.

### III. The No-Interest Rule

The issue Capital presents in this appeal is whether prejudgment interest awards in suits against WYO companies selling federally sponsored SFIP contracts violate

the "no-interest rule," the sovereign immunity principle that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S. Ct. 2957, 2961 (1986). Although suits against WYO companies are not suits against the federal government, Capital nevertheless contends that prejudgment interest awards against WYO companies always violate the no-interest rule because such awards constitute — as a legal conclusion derived from the NFIA and its implementing regulations — "direct charge[s] on the public treasury." *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987). Newton, on the other hand, argues that the controlling laws give the government no more than a "financial stake" in the payment of prejudgment interest by WYO companies, which is, as the district court held, insufficient by itself to invoke the no-interest rule in a given case. *West v. Harris*, 573 F.2d 873, 882 (5th Cir. 1978).[2] We review the question de novo, *see Powers v. United States*, 996 F.2d 1121,

[2]      *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), affirmed a prejudgment interest award against a private company selling federal flood insurance. Our holding in this case does not conflict with it, however; *West* was decided at a time when the structure of the NFIP involved a more attenuated relationship between private insurance companies selling flood insurance and the federal agency running the NFIP. The "Industry Program With Federal Financial Assistance" at issue in *West*, 42 U.S.C. subch. II, pt. A, involved a pool of private insurers selling flood insurance under an agreement between the pool as an entity (rather than individual insurers) and the government (then represented by the Department of Housing and Urban Development (HUD)). *See* 42 U.S.C. §§ 4051-4052. HUD provided only reinsurance coverage when necessary and payments to the pool to make up for the issuance of insurance at less-than-actuarial rates. *See* §§ 4054-4055. The insurance companies were, under explicit

1123 (11th Cir. 1993), and hold that the no-interest rule prohibits awards of prejudgment interest against WYO companies.

We start our analysis by recognizing that those circuits considering the question have, for important reasons, found the no-interest rule to bar awards of interest in suits directly against FEMA. *See Sandia Oil Co. v. Beckton*, 889 F.2d 258, 263 (10th Cir. 1989) (holding, on reasoning equally applicable to awards of prejudgment interest, that postjudgment interest may not be awarded in suits directly against FEMA); *Lee*, 812 F.2d at 256. To begin with, the cases note that nothing in the NFIA indicates a Congressional waiver of immunity from interest awards. *See Lee*, 812 F.2d at 256; *see also Sandia Oil*, 889 F.2d at 262 (citing *Lee*). Nor, as one court has further concluded, does the NFIP produce a profit for the federal government against which interest awards may sometimes be appropriate because the government's role resembles that of a profit-making, private entity. The NFIP is a subsidy program.[3]

statutory provisions, exclusively responsible for adjusting claims, paying claims, and defending suits arising from disallowed claims, *see* § 4053. *See also Van Holt*, 163 F.3d at 165; *Berger v. Pierce*, 933 F.2d 393, 394-95 (6th Cir. 1991) (both recounting the history of the NFIP). By contrast, as Capital notes, today's NFIP is a "Government Program With Industry Assistance." 42 U.S.C. subch. II, pt. B. As we explain in the text, in this scheme the money to pay claims comes from a federally administered fund rather than a subactuarial insurance pool.

[3] On this point, the Tenth Circuit has found an exception to the no-interest rule for engagement in profitable "'commercial enterprise'" inapplicable. *Sandia Oil*, 889 F.2d at 261 (quoting *Shaw*, 478 U.S. at 317 & n.5, 106 S. Ct. at 2963 & n.5). The court compared the holdings in the controlling cases, *United States v. Worley*, 281 U.S. 339, 50 S. Ct. 291 (1930) and *Standard Oil Co. v. United States*, 267 U.S. 76, 45 S. Ct. 211 (1925), both of which dealt with coverage disputes over insurance sponsored and sold by the United States government. It noted that *Worley*, in which prejudgment interest was barred, distinguished *Standard Oil*, in

The holdings of our sister circuits are consistent with the Supreme Court's articulation of the no-interest rule. *See Shaw*, 478 U.S. at 314-17, 106 S. Ct. at 2961-63. Moreover, Newton concedes that both *Lee* and *Sandia Oil* were correctly decided. We use their conclusions as a starting point and examine the relationship between FEMA and WYO companies to determine whether the no-interest rule bars prejudgment interest awards against WYO companies as well.

Capital urges us to accept a dictum from the Fifth Circuit that any award of prejudgment interest against a flood insurer is "a direct charge on the public treasury" indistinguishable from identical awards in suits against FEMA itself and is thus precluded by the no-interest rule. *Lee*, 812 F.2d at 256 (making the statement in the context of a suit directly against FEMA). *Cf. Gowland v. Aetna*, 143 F.3d 951, 954-55 (5th Cir. 1998) (referring to *Lee*'s "direct charge" language and prohibiting application of the doctrine of equitable estoppel against a WYO company because the doctrine could not be applied against the federal government). To even entertain this idea, we must accept the proposition that the no-interest rule can ever apply to shield private entities from interest awards. We can do so because we recognize that

---

which prejudgment interest was allowed, because the government insurance program addressed in *Standard Oil* was profitable while the program considered in *Worley* was not. *See id.* at 262-63 (citing *Worley*, 281 U.S. at 343, 50 S. Ct. at 293). Because the federal government subsidizes rather than profits from the NFIP, the Tenth Circuit reasoned that the commercial enterprise exception cannot apply to the NFIP. *See id.* at 263-64.

Congress should be able to implement federal programs using private entities rather than government agencies without necessarily waiving protection of program funds under the no-interest rule. We also recognize, however, that the rule as applied to private entities should be a narrow one applicable only when the interest charge really is, for all relevant purposes, directly against the federal government. To conclude otherwise would allow private entities to use the no-interest rule to protect their purely private concerns rather than public programs. This is why, as *West* holds, "a financial stake in . . . [the flood insurance] program is not sufficient to cloak . . . [a] defendant [insurance company] with the robe of sovereign immunity from awards of any interest." *West*, 573 F.2d at 882.

Even under this narrow view, however, Capital contends that the no-interest rule protects it from the award in this case because the regulations detailing the financial relationship between FEMA and WYO companies establish that interest charges against WYO companies are direct charges against FEMA. We agree. Capital begins by noting that although WYO companies initially collect premiums from which they must pay claims (including those ordered paid only as a result of litigation), and refunds, *see* 44 C.F.R. pt. 62, app. A, arts. II(E), III(D)(1)-(2), III(E), the amount of the collected premiums actually controlled by and immediately available to the WYO companies is severely curtailed by the regulations. Premiums

received must be kept in separate accounts, *id.* app. A, art. II(E), and all funds not required to meet current expenditures must be remitted to FEMA, *id.* app. A, art. VII(B). When the scant funds retained by the WYO company are not enough to satisfy outstanding claims and refunds, the WYO companies must draw upon letters of credit from FEMA. *Id.* app. A, art. IV(A). Because premiums collected on the policies do not belong to the WYO insurers, *see id.* app. A, art. VII(B), claim payments come out of FEMA's pocket regardless of how they are paid.

Capital also points out the functionary status of the WYO companies in relation to FEMA. Under the statute, WYO companies act as the "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1); *see also* 44 C.F.R. § 62.23(f) (characterizing the relationship between the federal government and WYO companies as "one of a fiduciary nature" and intended to "assure that any taxpayer funds are accounted for and appropriately expended"). WYO companies may not alter the terms of SFIPs, or insert flood coverage into other policies. 44 C.F.R. § 62.23(c), (h)(6). Finally, they must adjust claims under NFIP guidelines. *Id.* § 62.23(*i*)(1).

Capital persuades us with these points — FEMA's inevitable liability for claims and its substantial administrative oversight —  to join our fellow circuits in concluding that the line between a WYO company and FEMA is too thin to matter for the purposes of federal immunities such as the no-interest rule. *See Flick v. Liberty*

11

*Mut. Fire Ins. Co.*, 205 F.3d 386, 393-94 (9th Cir.) (relying on unlikelihood that claims will be paid out of premiums, rather than federal fund, to conclude that WYO policies are federal insurance policies financed by congressional authorization, and that the Appropriations Clause therefore prohibits any "substantial compliance" softening of proof-of-loss requirements), *cert. denied*, 121 S. Ct. 305 (2000); *Van Holt v. Liberty Mut. Fire Ins. Co*, 163 F.3d 161, 166-67 (3d Cir. 1998) (concluding that a suit against a WYO insurer is, for jurisdictional purposes, "in reality" a suit against FEMA because FEMA pays the judgment and litigation costs); *Gowland v. Aetna*, 143 F.3d 951, 954-55 (5th Cir. 1998) (because losses WYO policies are paid from federal funds, a WYO insurer cannot waive a right to a proof-of-loss statement, or be equitably estopped from demanding one).

Newton does point to countervailing considerations that might suggest that payment of claims is not a direct charge on federal funds. First, the regulations amply demonstrate that the role accorded WYO companies is in minor respects  more than that of mere functionary. WYO companies may issue policies in their own names (as Capital issued Newton's) rather than in that of FEMA or the United States, *see* 44 C.F.R. § 61.13(f), and they may use their own, individual "customary business practices", *id.* § 62.23(a); *see also id.* § 62.23(e). For example, a WYO company may accept an application previously rejected by another WYO company. *See id.* §

12

62.23(h)(5). Similarly, WYO companies adjust claims in accordance with their own "general [c]ompany standards," although they must seek guidance from "NFIP [c]laims manuals." *Id.* § 62.23(i)(1). Finally, the regulations expressly deny that WYO companies are general agents of the government; the companies are thus "responsible for their obligations to their insureds under any flood insurance policies issued." *Id.* § 62.23(g). WYO companies, rather than FEMA, are thus initially responsible for the "adjustment, *settlement*, *payment* and *defense*" of claims on the policies they sell. *Id.* § 62.23(d) (emphasis added). A WYO company choosing to defend against a claim must therefore seek reimbursement for its costs rather than merely handing the case over to FEMA. *See id.* § 62.23(i)(6) ("[D]efense costs will be part of the . . . claim expense allowance . . . ."). Reimbursement may be limited, moreover, if a WYO company fails to meet certain documentation requirements. *See id.* pt. 62, app. A, art. III(D)(2).

But the reality lying behind these observations robs them of their strength. A WYO company may write a policy in its name, but FEMA dictates the terms. And preliminary responsibility is a mirage when the federal government, through FEMA, will always foot the full bill in the end. Giving these factors controlling weight would elevate the form of the insurance system over its substance. We thus conclude that prejudgment interest awards against WYO companies are direct charges on the public

13

treasury forbidden by the no-interest rule and reverse the part of the judgment awarding such interest.  The remainder of the judgment is unchallenged, and it is accordingly affirmed.

AFFIRMED IN PART; REVERSED IN PART.