Filed:  June 4, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 01-1214(L)
(CA-99-141-7-BR)

Joseph Battle,

Plaintiff - Appellant,

versus

Seibels Bruce Insurance Company, et al.,

Defendants - Appellees.

O R D E R

The court amends its opinion filed April 29, 2002, as follows:

On page 2, section 4, line 3 -- the name "Dana T. Blackmore, Fayetteville, North Carolina" is removed from the "ON BRIEF" section.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JOSEPH BATTLE,
      *Plaintiff-Appellant,*

      v.

SEIBELS BRUCE INSURANCE COMPANY;
SOUTH CAROLINA INSURANCE
COMPANY,                                                    No. 01-1214
      *Defendants-Appellees,*

      and

GLASGOW HICKS COMPANY; NORTH
CAROLINA JOINT UNDERWRITING
ASSOCIATION,
      *Defendants.*


JOSEPH BATTLE,
      *Plaintiff-Appellee,*

      v.

SEIBELS BRUCE INSURANCE COMPANY;
SOUTH CAROLINA INSURANCE
COMPANY,                                                    No. 01-1256
      *Defendants-Appellants,*

      and

GLASGOW HICKS COMPANY; NORTH
CAROLINA JOINT UNDERWRITING
ASSOCIATION,
      *Defendants.*


Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CA-99-141-7-BR)

Argued: December 5, 2001

Decided: April 29, 2002

Before WIDENER and WILLIAMS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Senior Judge Hamilton wrote the opinion, in which Judge Williams
joined. Judge Widener wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Carmen J. Battle, Fayetteville, North Carolina, for Appel-
lant. Gerald Joseph Nielsen, NIELSEN LAW FIRM, Metairie, Louisi-
ana, for Appellees. **ON BRIEF:** Walter T. Johnson, Jr., Greensboro,
North Carolina, for Appellant. Eric Stevens, POYNER &
SPRUILL, L.L.P., Raleigh, North Carolina, for Appellees.

_____

**OPINION**

HAMILTON, Senior Circuit Judge:

   This appeal primarily presents a subject matter jurisdiction ques-
tion with respect to certain claims emanating from a coverage dispute
between a homeowner and the South Carolina Insurance Company
(SCIC) which involves a flood insurance policy issued under the
National Flood Insurance Program (NFIP), *see* 42 U.S.C. §§ 4001-
4129. The claims allege breach of the implied covenant of good faith
and fair dealing and the temporary conversion of money. We hold the
district court possessed subject matter jurisdiction over these claims
under the federal question statute, 28 U.S.C. § 1331, and, therefore,
we vacate the district court's remand of those claims to state court.

2

We remand this case to the district court for further proceedings on those claims consistent with this opinion.

We also affirm the district court's grant of summary judgment in favor of SCIC with respect to the homeowner's breach of contract claim against it. We also affirm the district court's grant of summary judgment in favor of codefendant Seibels Bruce Insurance Company (Seibels Bruce)[1] with respect to all claims against it.

I.

On October 23, 1995, SCIC issued Joseph Battle (Battle) a flood insurance policy under the NFIP for his beach-front home (the Property) located at 911 Canal Drive, Carolina Beach, North Carolina. Before we continue setting forth the facts and procedural history relevant to the issues on appeal, we deem the immediately following explanation of the NFIP necessary to put such information in proper context.

A.

Congress established the NFIP under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, in order to make flood insurance available on reasonable terms and conditions to those in need of such protection, *id.* at § 4001. Furthermore, as the Seventh Circuit recently explained:

> When Congress created the NFIP it gave the program's administrator two ways to execute the program and discretion to choose between them. The first method, the "Industry Program," allows a pool of private insurers to underwrite flood insurance with financial backing from the government. The "Government Program," the second option, allows the government to run the NFIP itself—offering federally underwritten policies—with the potential for administrative assistance from private insurers. In 1977[,] the Secretary of Housing and Urban Development, who ran the NFIP at the

_____

[1] Seibels Bruce is the parent company of SCIC.

time (it has since been taken over by the Federal Emergency Management Agency), decided that the Industry Program was unworkable and ended it. He then implemented the Government Program, which has continued to the present.

*Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 678-79 (7th Cir. 2001) (internal citations omitted).

For more than twenty years, the Director of the Federal Emergency Management Agency (FEMA) has been charged as the sole administrator of the NFIP. Exec. Order No. 12127, 44 Fed. Reg. 19367 (Mar. 31, 1979), *reprinted in* 15 U.S.C. § 2201 (making effective Reorganization Plan No. 3 of 1978, 43 Fed. Reg. 41943 (June 19, 1978), *reprinted in* 15 U.S.C. § 2201). Moreover, the Director of FEMA is statutorily authorized to provide, by regulation, not only "for the general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage" under the NFIP, but also for the general method or methods by which proved and approved claims for losses under such policies may be adjusted and paid. 42 U.S.C. §§ 4013, 4019. Significantly, by FEMA regulation, all policies issued under the NFIP must be issued using the terms and conditions of the Standard Flood Insurance Policy (SFIP) found in 44 C.F.R. Part 61, Appendix A. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c).

The Director of FEMA operates the Government Program of the NFIP "through the facilities of the Federal Government . . . ." 42 U.S.C. § 4071(a). In so doing, the Director of FEMA is authorized to use private insurance companies "as fiscal agents of the United States," *id.* at § 4071(a)(1), and to enter into with insurance companies any necessary "contracts, agreements, or other appropriate arrangements," *id.* at § 4081(a).

In 1983, the Director of FEMA used this authorization to create the "Write-Your-Own Program" (WYO Program). The WYO Program is a program whereby private insurance companies are allowed to issue, under their own names as insurers, flood insurance policies under the Government Program. 44 C.F.R. § 62.23. Insurance companies which participate in the WYO Program are known as "WYO Companies." *Id.* Notably, all flood insurance policies issued by WYO Companies

4

under the WYO Program must mirror the terms and conditions of the SFIP, which terms and conditions cannot be varied or waived other than by the express written consent of the Federal Insurance Administrator. 44 C.F.R. §§ 61.4(b), 61.13(d), (e), 62.23(c), (d). Additionally, "[a] WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the [NFIP], based upon the terms and conditions of the [SFIP]." 44 C.F.R. § 62.23(d).

Premiums collected by WYO Companies, after deducting fees and costs, must be deposited in the National Flood Insurance Fund in the United States Treasury. 42 U.S.C. § 4017(d); 44 C.F.R. Pt. 62, App. A, Arts. II(E) & VII(B). When the funds retained by WYO Companies are insufficient to satisfy outstanding claims and refunds, the WYO Companies must draw upon letters of credit from FEMA. 44 C.F.R. Pt. 62, App. A, Art. IV (A). In short, premiums collected on policies written by WYO Companies do not belong to those companies. *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1311 (11th Cir. 2001). Thus, claim payments on such policies are a direct charge on the United States Treasury. *Id.*; *see also* 44 C.F.R. § 62.23(f) (characterizing the relationship between the federal government and WYO Companies as "one of a fiduciary nature" and intended to "assure that any taxpayer funds are accounted for and appropriately expended").

B.

SCIC is a WYO Company. As a WYO Company, SCIC issued Battle a SFIP for the Property (Battle's SFIP or his SFIP) for a one-year period beginning October 23, 1995. Significantly, Article 9(R) of Battle's SFIP provides as follows:

> **Conditions for Filing a Lawsuit**: You may not sue us to recover money under this **policy** unless you have complied with all of the requirements of the **policy**. If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of your claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of the loss.

5

(J.A. 484).[2]

On July 18, 1996, a property loss notice was forwarded on behalf of Battle to SCIC indicating that portions of the Property had sustained flood damage on July 12, 1996 as a result of Hurricane Bertha (the Bertha Claim). Specifically, Battle claimed flood damage to two structures built over the water and their miscellaneous contents, an enclosure on ground level under an elevated building, an air conditioning unit on a support stand, and the ceiling under an elevated building.

On September 13, 1996, another property loss notice was forwarded on behalf of Battle to SCIC. This time SCIC was notified that the Property had sustained additional flood damage on September 5, 1996 as a result of Hurricane Fran (the Fran Claim). This second property loss notice reported the damage to the Property as follows: "[R]oof, railing off deck, glass window seal broke, water damage inside, side of out building gone, fence damaged, contents damaged." (J.A. 388).

Following a physical inspection of the Property by an insurance claim adjuster from Insurance Network Services sent by SCIC, Battle was sent a letter dated September 24, 1996, stating that his SFIP provided no coverage for his Bertha Claim.[3] Although the letter was on the letterhead of "The Seibels Bruce Insurance Companies," the "RE:" section of the letter correctly referenced the policy number of Battle's SFIP and the date he claimed to have sustained flood damage to the Property as the result of Hurricane Bertha. The letter specifically

_____

[2] The cover page of Battle's SFIP stated that "COVERAGE IS PROVIDED BY THE COMPANY INDICATED ON THE DECLARA-TIONS PAGE." (J.A. 474). The declarations page lists SCIC as the company providing coverage, *i.e.*, the insurer. Thus, the references to "us" and "we" in Article 9(R) of Battle's SFIP refer to SCIC. 44 C.F.R. § 61.13(f) ("In the case of any [SFIP], and its related forms, issued by a WYO Company, wherever the names `Federal Emergency Management Agency' and `[FEMA]' appear, the WYO Company is authorized to substitute its own name therefor.").

[3] Battle specifically acknowledges his receipt of this letter on page nineteen of his opening appellate brief.

advised Battle that his SFIP "does not provide coverage for outbuild-ings, walkways or contents located in the enclosure of an elevated building." (J.A. 386). The letter further advised him that his SFIP "does provide coverage for appurtenant structures, but only detached garages and carports," and quoted the coordinate portions of Battle's SFIP. *Id.* The closing paragraph of the letter states as follows:

> Since you did not sustain a loss that would be covered by your flood policy, I regret to inform you Catawba Insurance Company will be unable to assist you in this matter. If you have any information which you feel may cause us to reevaluate our position, please do not hesitate to contact us by return mail.

(J.A. 387).[4] The letter was signed by Linda Taylor, Senior Claims Representative.

Following another physical inspection of the Property by an insur-ance claim adjuster from Insurance Network Services sent by SCIC, Battle was sent a second letter dated January 21, 1997, stating that his SFIP provided only partial coverage for his Fran Claim.[5] Although the letter was on the letterhead of "The Seibels Bruce Group, Inc.," the "RE:" section of the letter correctly referenced the policy number of Battle's SFIP and the date he claimed to have sustained flood damage to the Property as the result of Hurricane Fran. The entire body of the letter states as follows:

> Reference is made to the flood damage your above refer-enced property sustained on 9/5/96. Enclosed is a check for

_____

[4] Even viewing the record, as we must, in the light most favorable to Battle, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), leads to the inescapable conclusion that the reference to the Catawba Insurance Company, another subsidiary company of Seibels Bruce, was an inadvertent mistake, with SCIC being the insurance com-pany intended to be named. Indeed, the "RE:" line at the beginning of the letter correctly refers to the policy number of Battle's SFIP, which SCIC issued.

[5] Battle specifically acknowledges his receipt of this letter on page nineteen of his opening appellate brief.

> the undisputed amount of loss for which your flood policy provides coverage.
>
> Also enclosed is a Proof of Loss in the amount of $6,195.15 (check amount). Please sign the Proof of Loss and return it in the self-addressed stamped envelope provided.
>
> If you have any additional information you feel might cause us to reevaluate our position, please let us know by return mail.

(J.A. 390). The letter is signed by Michael Shaw, Claim Representative.

For reasons unexplained in the record, the check referenced as enclosed with the letter was not so enclosed. Nevertheless, Battle received a check for the same amount referenced in the January 21, 1997 letter in either late April or early May 1999 following a letter of inquiry by his attorney.

Nearly three years after Battle received the letter denying his Bertha Claim and two and one-half years after he received the letter denying his Fran Claim, in July 1999, Battle filed suit in North Carolina state court against SCIC, Seibels Bruce, the North Carolina Insurance Underwriting Association (NCIUA),[6] as well as the Glasgow Hicks Company (Glasgow Hicks), the independent insurance agency through which Battle purchased his SFIP. Glasgow Hicks is located in Wilmington, North Carolina.

Battle's complaint alleged multiple claims, but the only claims at issue in the present appeal are his claims against SCIC and Seibels Bruce: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) conversion.[7]

_____

[6] By mistake, Battle originally named the North Carolina Joint Underwriting Association rather than the NCIUA as a defendant. Battle's claims against the NCIUA concerned separate dwelling and crime policies allegedly issued by NCIUA with respect to the Property.

[7] Battle's claims for conversion against SCIC and Seibels Bruce sought damages for the alleged temporary conversion of the money SCIC admitted in its January 21, 1997 letter that it owed Battle with respect to the Fran Claim.

SCIC and Seibels Bruce removed Battle's suit to the United States District Court for the Eastern District of North Carolina. The removal was based upon federal question jurisdiction, 28 U.S.C. § 1331, and upon 42 U.S.C. § 4072.[8] Battle did not object to the removal.

Following discovery, all defendants filed motions for summary judgment. Among other grounds, Seibels Bruce sought the grant of summary judgment with respect to all claims against it on the ground that it lacked privity of contract with Battle. Battle responded that liability on his SFIP should extend to Seibels Bruce because Seibels Bruce's logo appeared on the letterhead of the claim denial letters and on the declarations page of his SFIP. Agreeing fully with Seibels Bruce's lack of privity of contract argument, the district court granted Seibels Bruce's motion for summary judgment *in toto*.

Among other grounds, SCIC sought the grant of summary judgment in its favor with respect to all claims on the ground that Battle filed his lawsuit outside the twelve-month limitation period set out in Article 9(R) of Battle's SFIP and 42 U.S.C. § 4072. The district court partially agreed with SCIC, concluding that the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP and 42 U.S.C. § 4072 only applied to Battle's claim against SCIC for breach of contract. Specifically, the district court ruled that the language of Article 9(R) of Battle's SFIP and § 4072 describing the nature of the claims subject to the twelve-month limitation period was not broad enough

_____

[8] 42 U.S.C. § 4072 provides:

> [T]he Director [of FEMA] shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

*Id.*

to cover Battle's claims against SCIC alleging breach of the implied covenant of good faith and fair dealing and conversion. Accordingly, the district court granted SCIC's motion for summary judgment with respect to the breach of contract claim and remanded all claims remaining in the case, including the claims against NCIUA and Glasgow Hicks, to state court pursuant to 28 U.S.C. § 1367(c)(3).[9]

Battle noted a timely appeal. On appeal, Battle does not appeal the district court's remand of any of his claims against NCIUA or Glasgow Hicks. Neither do either of these companies cross-appeal on any ground. Rather, Battle only appeals: (1) the district court's grant of summary judgment in favor of Seibels Bruce with respect to all of his claims against Seibels Bruce; and (2) the district court's grant of summary judgment in favor of SCIC with respect to his breach of contract claim against SCIC.

Seibels Bruce and SCIC noted timely cross-appeals. SCIC cross-appeals the district court's remand of Battle's claims against it alleging breach of the implied covenant of good faith and fair dealing and conversion. Seibels Bruce joins in SCIC's cross-appeal in the event we reject its lack of privity of contract argument. We will address Battle's appeal first and SCIC's cross-appeal second.

## II.

Battle first contends the district court erred by granting summary judgment in favor of Seibels Bruce for lack of privity of contract. According to Battle, he has privity of contract with Seibels Bruce based upon the equitable theories of apparent agency (also known as apparent authority) and agency by estoppel. Battle theorizes that Seibels Bruce is a proper party because its logo appeared on the claim denial letters and on the declarations page of his SFIP.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

_____

[9] The district court also stated that the twelve-month limitation period "would serve as an alternative basis for dismissing the breach of contract claim against Seibels [Bruce]." (J.A. 582 n.3).

10

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874 (4th Cir. 1992). In so doing, we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88.

Battle's challenge to the district court's grant of Seibels Bruce's motion for summary judgment is without merit. Every formulation of the equitable theories relied upon by Battle requires as an element *reliance by the plaintiff* upon the apparent agency relationship with the principal involved in order to establish liability. *E.g.*, *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 166 (4th Cir. 1988) (under both equitable theories of apparent agency or agency by estoppel, though no actual agency exists, a party may be held to be the agent of another on the basis that he has been held out by the other to be so in a way that reasonably induces reliance on the appearances) (applying North Carolina law); *Johns Hopkins Univ. v. Ritter*, 689 A.2d 91, 100 (Md. Ct. Spec. App. 1996) ("Like apparent authority, an agency by estoppel can arise only where the principal, through words or conduct, represents that the agent has authority to act and the third party *reasonably* relies on those representations.").

The record in this case is bereft of evidence suggesting that Battle relied upon any apparent agency relationship between Seibels Bruce and SCIC in connection with his decision to purchase flood insurance from SCIC or in his actions following such purchase. Accordingly, we affirm the district court's grant of summary judgment in favor of Seibels Bruce with respect to all of Battle's claims against it based upon the lack of privity of contract between Battle and Seibels Bruce.

III.

Battle next challenges the district court's grant of summary judgment in favor of SCIC with respect to his breach of contract claim against SCIC, which claim the district court determined was time-barred pursuant to Article 9(R) of Battle's SFIP and 42 U.S.C. § 4072. We affirm the district court's grant of summary judgment in

11

favor of SCIC on the basis that the claim is time-barred pursuant to Article 9(R) of Battle's SFIP.

Article 9(R) of Battle's SFIP provides:

> **Conditions for Filing a Lawsuit**: You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy**. *If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim, or part of your claim*, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.

(J.A. 484) (italics added).

We hold the mailing of the September 24, 1996 letter denying the Bertha Claim triggered the beginning of this twelve-month limitation period with respect to the Bertha Claim. In his appellate brief, Battle candidly acknowledges that he received the September 24, 1996 letter, which plainly states that it was sent "in reference to the claim which was presented under the above referenced policy number."[10] (J.A. 386). The "RE:" portion of the letter correctly states the policy number of Battle's SFIP and the date Battle claimed Hurricane Bertha damaged the Property, July 12, 1996. The letter specifically references the claim inspection performed by Mr. Gattiker of Insurance Network Services and the fact that Mr. Gattiker "advised that you sustained flood damage to two outbuildings, contents which were located in the enclosure, and a walkway." (J.A. 386). The letter goes on to specifically state and explain why none of the claimed damage is covered by the referenced policy. Finally, the letter closes with the name and telephone number of a senior claims representative and a "cc:" to Glasgow Hicks. (J.A. 387).

_____

[10] Although Battle does not actually specify when he received the September 24, 1996 letter, his filings and oral argument before this court imply nothing other than the fact that he received it shortly after its stated mailing date of September 24, 1996.

12

Despite all of this information, Battle argues that the September 24, 1996 letter was ineffective to put him on notice that SCIC had denied the Bertha Claim because the letter appeared on the letterhead of "THE SEIBELS BRUCE INSURANCE COMPANIES," rather than on the letterhead of SCIC. Battle contends that his argument is even stronger if we ultimately hold, as we did in Part II. of this opinion, that Battle lacks privity of contract with Seibels Bruce.

Battle's argument is without merit. Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). All of the information in the September 24, 1996 letter and the fact that the cover page of Battle's SFIP listed SCIC as a subsidiary company of "THE SEIBELS BRUCE INSURANCE COMPANIES," at a minimum, gave Battle sufficient facts about the alleged harm done to him (*i.e.*, denial of the Bertha Claim) that reasonable inquiry would have revealed his cause of action. In short, Battle was on inquiry notice that SCIC had denied his Bertha Claim at the time he received the September 24, 1996 letter. Thus, his breach of contract claim, filed almost three years after his receipt of the September 24, 1996 letter, is untimely under the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP.

Similarly, we hold the mailing of the January 21, 1997 letter denying the Fran Claim triggered the beginning of the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP with respect to that claim. Again, Battle candidly admits that he received the January 21, 1997 letter.[11] The letter correctly references the policy number of his SFIP, correctly states the date of his claimed loss due to Hurricane Fran, and plainly indicates that only a portion of the Fran Claim is covered while the remainder of the claim is denied.

In response to these facts, Battle reiterates his argument about the incorrect letterhead. We reject his argument for the same reason we

_____

[11] Again, although Battle does not actually specify when he received the January 21, 1997 letter, his filings and oral argument before this court imply nothing other than the fact that he received it shortly after its stated mailing date of January 21, 1997.

13

rejected it with respect to the September 24, 1996 letter. Battle's receipt of the January 21, 1997 letter and the fact that the cover page of Battle's SFIP listed SCIC as a subsidiary company of "THE SEIBELS BRUCE INSURANCE COMPANIES," at a minimum, gave Battle sufficient facts about the alleged harm done to him (*i.e.*, partial denial of the Fran Claim) that reasonable inquiry would have revealed his cause of action. *See Kubrick*, 444 U.S. at 122-24. Thus, Battle's breach of contract claim against SCIC in connection with the partial denial of the Fran Claim, filed almost two and one-half years after his receipt of the January 21, 1997 letter, is untimely under the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP.

In sum, we affirm the district court's grant of summary judgment in favor of SCIC with respect to Battle's breach of contract claim against SCIC on the basis that the claim is time-barred pursuant to Article 9(R) of Battle's SFIP.[12]

IV.

We now turn to address SCIC's cross-appeal. The district court believed that Battle's claims alleging breach of the implied covenant of good faith and fair dealing and temporary conversion of money that SCIC acknowledged in its January 21, 1997 letter that it owed Battle with respect to the Fran Claim (collectively "the Remaining Claims") did not "arise[] under the Constitution, laws, or treaties of the United States," as provided in 28 U.S.C. § 1331, the federal question statute. The district court also believed that the Remaining Claims did not come within the ambit of 42 U.S.C. § 4072, the federal statute providing "original exclusive jurisdiction" in federal court over claims "against the Director [of FEMA]" alleging wrongful full or partial disallowance of claims for SFIP coverage of losses due to flood damage.[13] *Id.* Accordingly, the district court believed that it

_____

[12] Given our affirmance on this basis, we need not and do not address whether the limitation period set forth in § 4072 operates to bar Battle's breach of contract claim against SCIC.

[13] Specifically, the district court opined that § 4072 applies to no claims beyond contract claims for coverage under an SFIP. The district court expressed no opinion regarding the applicability of § 4072 given the fact that Battle did not sue "the Director [of FEMA]" in the present action. *Id.*

14

could only possess subject matter jurisdiction over the Remaining Claims under 28 U.S.C. § 1367(a), the supplemental jurisdiction statute.[14] Having disposed of all claims in the case over which the district court believed that it possessed "original jurisdiction" (*i.e.*, the breach of contract claims against Seibels Bruce and SCIC), *id.*, the district court, pursuant to 28 U.S.C. § 1367(c)(3), declined to exercise supplemental jurisdiction over the Remaining Claims pursuant to § 1367(a) and, thus, ordered such claims remanded to state court.[15] *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (holding a district court's power to remand pendent state claims to state court is inherent in statutory authorization to decline supplemental jurisdiction under § 1367(c)).

In its cross-appeal, SCIC argues the district court lacked the discretion to remand the Remaining Claims to state court pursuant to § 1367(c)(3), because 42 U.S.C. § 4072 applies to the Remaining Claims despite the fact that the literal text of § 4072 only speaks of actions "against the Director [of FEMA]." *Id.* We agree with SCIC that the district court lacked discretion to remand the Remaining Claims to state court pursuant to § 1367(c)(3), but not for the reason advanced by SCIC. We need not tackle the difficult statutory construction question raised by SCIC's argument because the district court clearly possessed subject matter jurisdiction over the Remaining Claims pursuant to 28 U.S.C. § 1331.[16] *Newton*, 245 F.3d at 1309

_____

[14] Title 28 U.S.C. § 1367(a) provides, in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

*Id.*

[15] Title 28 U.S.C. § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." *Id.*

[16] Here, we acknowledge that Battle challenges our appellate jurisdiction to review the portion of the district court's order that remands the

15

(declining to address whether § 4072 provided additional basis for federal subject matter jurisdiction over insured's breach of contract claim against WYO Company after easily concluding that district court possessed subject matter jurisdiction over the claim pursuant to § 1331).

Title 28 U.S.C. § 1331 provides that district courts have subject matter jurisdiction of every civil action that "arises under the Constitution, laws, or treaties of the United States." *Id.* This means that "Congress has given the lower federal courts jurisdiction to hear `only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir. 2001) (*en banc*) (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983)).

Therefore, in order to determine whether the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the Remaining Claims, we turn to examine the allegations of Battle's complaint as they pertain to those two claims. Count Seven of Battle's complaint alleged that, by virtue of his SFIP, SCIC impliedly covenanted to act in good faith and to deal fairly with him in connection with any claim that he made under his SFIP; and that SCIC breached this covenant by refusing to settle the Bertha Claim and the Fran Claim in good

_____

Remaining Claims to state court. We reject this challenge based upon well-settled precedent. *See, e.g. Hinson*, 239 F.3d at 614-15 (holding remand orders not subsumed under statute barring review of remand orders based on defect in removal or on lack of subject matter jurisdiction may be appealed pursuant to 28 U.S.C. § 1291) (reviewing, as an appealable final order, discretionary remand order entered pursuant to 28 U.S.C. § 1367(c), which ordered pendent claims remanded to state court following settlement of federal claim). *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996) (permitting appeal of an abstention-based remand order under § 1291 and disavowing a previous decision's broad statement that "`an order remanding a removed action does not represent a final judgment reviewable on appeal'") (quoting *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 352-53 (1976)); 14C Charles Allen Wright, Arthur R. Miller, and Edward H. Cooper, *Fed. Prac. & Proc.* § 3740 (3d ed. 1998).

16

faith, by refusing to acknowledge his damage estimates with respect to those claims, and by refusing to assign qualified agents to identify and estimate the amount of damages to the Property. Count Ten of Battle's complaint alleged (in a claim entitled "CONVERSION") that, until May 4, 1999, SCIC wrongfully asserted dominion and control of $6,195.15 due him under his SFIP and in the form of a check made payable to him and Glasgow Hicks.

Battle's complaint does not specify upon what law, state or federal, he premises either of these claims. Accordingly, we cannot conclude that Battle's complaint establishes that federal law creates either claim. However, we do conclude that Battle's complaint establishes that Battle's right to relief under either claim"`necessarily depends on resolution of a substantial question of federal law.'" *Interstate Petroleum Corp.*, 249 F.3d at 219 (quoting *Franchise Tax Bd.*, 463 U.S. at 27). First, the law is well settled that federal common law *alone* governs the interpretation of insurance policies issued pursuant to the NFIP.[17] *Leland*, 934 F.2d at 529. *See also Newton*, 245 F.3d at 1309; *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.), *cert. denied*, 531 U.S. 927 (2000); *Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir. 1987); *Hanover Bldg. Materials, Inc.*, 748 F.2d at 1013; *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir. 1984); *West*, 573 F.2d at 881-82. Second, by force

_____

[17] Here, we are careful to note that the exclusive governance of federal common law in resolving interpretative questions concerning insurance policies issued pursuant to the NFIP does not preclude federal courts from drawing upon the body of standard insurance law principles in resolving such questions. *Leland v. Federal Ins. Adm'r*, 934 F.2d 524, 529-30 (4th Cir. 1991) ("In considering coverage questions arising under the NFIP, federal courts have recognized that, because potential exposure to claims and premium rates are estimated by FEMA in accordance with standard insurance practices, `Congress did not intend to abrogate standard insurance law principles which affect such estimates and risks.'") (quoting *Drewett v. Aetna Cas. & Sur. Co.*, 539 F.2d 496, 498 (5th Cir. 1976)). Indeed, in such circumstances, standard insurance law principles offer federal courts a valuable repository of settled law upon which to draw. *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) ("When such disputes arise, they are resolved under federal law `by drawing upon standard insurance law principles.'") (quoting *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978)).

of the regulatory authority granted the Director of FEMA by Congress, Battle's SFIP "is governed by the *flood* insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq*.), and Federal common law." 44 C.F.R. Pt. 61, App. A(1), Art. 11.[18] Indeed, Article 11 of Battle's SFIP contains this exact language. Therefore, at a minimum, Battle's claim alleging breach of the implied covenant of good faith and fair dealing raises the federal question of whether federal common law implies, as part of a SFIP, a covenant of good faith and fair dealing on the part of a WYO Company towards its insured. *Cf. Downey*, 266 F.3d at 681-82 (breach of contract claim against WYO Company brought by insured with respect to SFIP issued by the WYO Company, was one in which duties or rights of United States under a federal program were at stake, so that application, and if necessary creation, of federal common law was required, and breach of contract claim thus came within district court's federal question jurisdiction under § 1331); *Newton*, 245 F.3d at 1309 ("a complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question").

We also hold that Battle's complaint establishes that his right to

_____

[18] Here we note that effective December 31, 2000, FEMA revised 44 C.F.R. Pt. 61, App. A(1), Art. 9(R) to "*clarif[y]* the policy language pertaining to jurisdiction, venue and the applicable law to emphasize that matters pertaining to the [SFIP], including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law." 65 Fed. Reg. 60758, 60767 (2000) (emphasis added). Thus, as of December 31, 2000, Article 9(R) of the SFIP provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. *This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.*

65 Fed. Reg. 60758, 60776 (2000) (emphasis added).

18

relief upon his so-called "CONVERSION" claim"`necessarily depends on resolution of a substantial question of federal law.'" *Interstate Petroleum Corp.*, 249 F.3d at 219 (quoting *Franchise Tax Bd.*, 463 U.S. at 27). This is because Battle's so-called "CONVERSION" claim is essentially a breach of contract claim with respect to Battle's SFIP, which claim, as explained previously, is governed solely by federal law. The essence of the claim is that SCIC owed Battle money under the terms of his SFIP, which SCIC allegedly paid him in an untimely manner under the terms of his SFIP.

We recognize that on remand, the district court may be faced with other federal questions. For example, the district court may be faced with resolving whether, under the undisputed material facts, the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP bars Battle's claim against SCIC for breach of the implied covenant of good faith and fair dealing. In this regard, we hold, in direct contrast to the district court's ruling below, that such a claim would be a "su[it] to recover money under" Battle's SFIP as stated in Article 9(R) of Battle's SFIP. (J.A. 484). Logic dictates that any possible implied covenant of good faith and fair dealing on the part of SCIC that may be recognized by the district court on remand would be a contractual covenant implied by federal common law, and thus, a covenant "under" Battle's SFIP. *Id.* Indeed, in the portion of Battle's complaint setting forth his claim against SCIC for breach of the implied covenant of good faith and fair dealing, Battle's complaint alleges that such a covenant on the part of SCIC exists "[b]y virtue of" his SFIP. (J.A. 27).

Like Battle's claim alleging breach of the implied covenant of good faith and fair dealing, Battle's so-called "CONVERSION" claim also constitutes a "su[it] to recover money under" his SFIP, as stated in Article 9(R) of his SFIP. (J.A. 484). Thus, such claim is also subject to the accompanying twelve-month limitation period for bringing suit. Accordingly, as with Battle's claim alleging breach of the implied covenant of good faith and fair dealing, the district court may be faced with resolving whether, under the undisputed material facts, Battle's so-called "CONVERSION" claim is barred by the twelve-month limitation period set forth in Article 9(R) of Battle's SFIP.

19

Finally, we recognize that because the Remaining Claims are "su-[its] to recover money under" Battle's SFIP, as stated in Article 9(R) of Battle's SFIP, they are also subject to Article 9(R)'s contractual obligation that Battle litigate these claims, if at all, in "the United States District Court of the district in which the insured property was located at the time of the loss." (J.A. 484). Accordingly, rendered nugatory is any need to address SCIC's statutory construction argument that the exclusive federal court jurisdiction provision in 42 U.S.C. § 4072 applies to the Remaining Claims.[19]

For the reasons we have just explained, we hold the district court possessed subject matter jurisdiction over the Remaining Claims pursuant to § 1331. Accordingly, the district court erred when it remanded the Remaining Claims to state court pursuant to 28 U.S.C. § 1367(c)(3) based upon its mistaken belief that it had otherwise dismissed all claims over which it had "original jurisdiction." *Id.* Therefore, we vacate the portion of the district court's order remanding the Remaining Claims to state court and remand this case to the district court for further proceedings with respect to those claims consistent with this opinion.[20]

V.

In summary, we: (1) affirm the district court's grant of summary judgment in favor of Seibels Bruce with respect to all claims against it; (2) affirm the district court's grant of summary judgment in favor of SCIC with respect to the breach of contract claim against it; and (3) vacate the district court's order remanding to state court the

_____

[19] To be clear, by recognizing the applicability of the exclusive federal court jurisdiction requirement in Article 9(R) to the Remaining Claims, we are in no way suggesting that parties to a contract may contractually create federal court subject matter jurisdiction.

[20] We acknowledge that, in addition to holding that the district court lacked the discretion to remand the Remaining Claims to state court, SCIC argues that we should dismiss the Remaining Claims as preempted by federal law, under various theories of preemption. Given our disposition of the Remaining Claims, resolution of the various preemption issues raised by SCIC in this appeal would be premature. Accordingly, we do not address them.

20

Remaining Claims and remand this case to the district court for further proceedings consistent with this opinion.[21]

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*

WIDENER, Circuit Judge, concurring and dissenting:

I concur in Parts I, II, and III of the majority opinion.

I concur in Parts V(1) and V(2) of the majority opinion.

The remaining parts of the opinion are Part IV and V(3); with respect to these, I respectfully dissent. They concern only the claims of an "implied covenant of good faith and fair dealing" and the "temporary conversion of money that SCIC acknowledged in its January 21, 1997 letter."

In my opinion, there is no cause of action arising under federal common law for either of those two items.

Among other reasons, acknowledging their existence under federal common law is very nearly in the teeth of *Erie Railroad v. Thompkins*, 304 U.S. 64 (1938): "There is no federal general common law." 304 U.S. at 78.

Second, an equally strong reason is that I would not leave open on remand any option for the district court to find that such causes of action exist in this case under federal common law, thus inviting an arguable opportunity for a plaintiff to recover from the Treasury of the United States on those causes of action, a result never intended under the National Flood Insurance Program. On remand, I would require the district court to dismiss those claims as not stating a federal question cause of action.

_____

[21] We deny SCIC and Seibels Bruce's motions to file a pre-oral argument supplemental memorandum and supplement the record with the *amicus curiae* brief which FEMA filed with the Seventh Circuit in *Downey*, 266 F.3d at 675.